ADKINS, J.
The main object of this suit is to enjoin the collection of assessments levied by the Comptroller of the Currency on the stockholders of the District National Bank. The case is heard on motions of various defendants to dismiss the supplemental and amended bill of complaint.
*276 Two grounds are relied on to support the main object of the suit; first, that in September, 1933, the Comptroller made certain representations to the stockholders which amounted to a promise that there would be no receivership or stock assessment; and, second, that in order to pay the debts of the bank it is not necessary to enforce the individual liability of the stockholders.
It is further alleged that the money necessary to pay the remaining debts may be realized by revaluing the real estate owned by the bank; and by obtaining an accounting from the Secretary of War for losses incurred in the sale of bonds in order to pay the deposit made by him as trustee; by avoiding a sale made in September, 1933, of certain assets of the bank to the Hamilton National Bank, and securing an accounting from the bank; by compelling the conservator, receiver and Comptroller to reimburse the bank for extravagant and excessive expenses of the liquidation; and by bringing suits against others unnamed. The bill makes the Secretary of War, Hamilton National Bank, the conservator, receiver and Comptroller parties defendant, and seeks to recover large sums from them.
The grounds upon which the main object of the suit is based are stated in more detail as follows :
First, that the Comptroller assured plaintiffs that the District National Bank was not insolvent, and that if the plan for the organization of the Hamilton National Bank should be perfected there would be an orderly and sympathetic conservation and liquidation of that bank; that such assurances were tantamount to the representation that there would be no receivership or stock assessment; and that many plaintiffs (seventeen of whom are named) purchased stock in the Hamilton Bank in reliance upon said assurances (par. 18).
Second, that the bank is not insolvent, and that if its affairs are properly liquidated there will be funds with which to pay all debts and a dividend to the stockholders, and that *277 an assessment is not necessary. This conclusion is based upon the averments—
(a) That the real estate now owned by the bank was under-appraised (pars. 14 and 17).
(b) That during the month preceding the closing of the bank on March 3, 1933, excessive withdrawals were made at the instance of officers and directors, and that such depositors should be required to account therefor; discovery of the names of such depositors and the amounts withdrawn is prayed with the object of adding them as defendants (par. 13).
(c) That the Secretary of War as trustee of the Philippine Islands Gold Standard Pund deposited about $750,000 in the bank and required the same be secured by United States bonds; that he required the conservator or receiver to pay the deposit in full, and in order to do so the bonds were sold, and that such sale caused a large loss to the bank. Discovery of the amount is prayed, and recovery thereof is sought from the Secretary of War as such trustee and all others who participated in the matter (par. 11).
(d) That the costs of the conservatorship and receivership have been excessive, exorbitant and extravagant; that the conservator, receiver and Comptroller should be required to account and make good to the stockholders all loss and damage (par. 12).
(e) That the plaintiffs are entitled to an accounting from the Hamilton National Bank for and of the assets of the District Bank sold to defendant Hamilton National Bank under the assumed authority of an order of this Court dated September 7, 1933, approving the sale by the conservator of the District Bank of such assets.
It is contended that the conservator had no authority in law to make such a sale; even if he did have the authority, the sale was not made in a lawful way; and that the sale was otherwise objectionable for the following reasons—
(i) The conservator who made the sale was to become an *278 officer of the new bank and upon its organization did become vice-president thereof.
(ii) The contract was unfair to the stockholders and grossly advantageous to the Hamilton Bank because certain bonds were sold at the market price without regard to their intrinsic value or their prior market price or their prospective future market price; and because the contract permitted certain substitution of notes and other securities; because the contract was stated to be made in order to permit a ratable distribution to creditors of 50% and thereafter accounts were opened in the Hamilton Bank for certain depositors for 50% of their balances, but that seven of the plaintiffs are not included therein (pars. 5-9).
It is also alleged that the Hamilton Bank took over as part of the plans of its organization the existing deposit accounts of the District Bank but made no payment therefor and that the Hamilton Bank should account for the fair and reasonable purchase value of said deposit accounts in whatever sum the Court may find to be proper (par. 15).
It is also alleged that the District Bank had conducted its business at 1410 G Street and at several branches throughout the city of Washington and had built up a valuable goodwill, for which goodwill the Hamilton Bank made no payment or accounting; and that the Hamilton Bank should be required to account for said goodwill (par. 16).
OPINION
In my judgment the bill of complaint does not state facts which authorize the Court to enjoin the enforcement of the assessment.
1. The facts alleged in par. 18 do not justify the assertion that the Comptroller in fact did represent or promise that there would be no assessment.
I think it is doubtful whether the Comptroller, by statements of the kind set forth in par. 18, could estop himself *279 from levying an assessment thereafter if in his judgment such assessment was necessary to pay the debts of the bank.
See Huff v. Page, 2 F. (2d) 544.
Page v. Jones, 7 F. (2d) 541.
In re Plain State Bank, 258 N.W. 783, at 785.
2. The other ground to support the main purpose of the bill is that in order to pay the bank’s debts it is not necessary to enforce the individual liability of the stockholders. It is alleged that if the real estate owned by the bank be reappraised and that if an accounting be had from the numerous defendants and from other prospective defendants enough money will be collected to pay the debts and a dividend to the stockholders.
The statute under which the Comptroller and receiver are acting provides that—
«* * * the receiver, under the direction of the Comptroller *•* * may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders” (Sec. 192, Title 12 USCA).
It is settled law that a decision by the Comptroller that, in order to pay the debts of the association, a stock assessment is necessary is not subject to attack or open to review in the courts except for fraud. See Harper v. Moran, Receiver, decided March 4, 1935, by the U. S. CCA for the D.C.; Washington Loan & Trust Co. v. Allman, Receiver, 70 F. (2d)282; Broderick v. American General Corporation, 71 F. (2d) at 869.
The banking laws contemplate a prompt liquidation of the affairs of an insolvent bank and speedy payment to creditors. After payment of all debts and the expenses of the receivership the stockholders are entitled, if they wish, to take charge of the affairs of the bank. Of course any balance belongs to them. See Sec. 197 Title 12 USCA.
In Kennedy v. Gibson, 8 Wall. 498, 505, 506, the Court said—
*280 “A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered.”
In Broderick v. American General Corporation, 71 F. (2d) 864, the Court of Appeals of the Fourth Circuit quoted with approval from Matter of Union Bank, 176 App. Div. 477, where, in discussing the New York law, it was said—
“Liquidation presupposes the prompt and speedy conversion of assets to cash in the interests of creditors, and the right to enforce and collect the assessment should not be subject to defeat by the mere balancing of the opposing opinions and views of expert witnesses upon the questions of reasonable values. If it should ultimately appear that the assessment was unnecessary in whole or in part, the stockholders are entitled to share in any remaining surplus. Banking Law, sec. 79. As between the stockholder and the creditor, it is the convenience of the latter that is preferred by the courts.”
See also Liberty Bank v. McIntosh, 16 F. (2d)906, 908; Crawford v. Gamble, 57 F. (2d) 17; Miller v. Stock, 65 F. (2d)773.
From the facts above stated it is clear that the funds now on hand or to be realized from the sale of remaining assets will not pay the debts of the bank. The money with which to pay the debts is to be obtained by securing an accounting from the Secretary of War for losses incurred in the sale of bonds to pay the deposit of the Philippine Islands Gold Standard Fund; by securing an accounting from the Hamilton National Bank growing out of the sale to it; by compelling the receiver and the Comptroller to reimburse the bank for the extravagant expenses of liquidation, and from various suits to be brought against undisclosed depositors. In other words, it is hoped that the moneys to pay the debts will be realized *281 from the several defendants to the present suit, and from other persons yet to be sued.
It is evident that years may elapse before the litigation will be concluded and that no one can prophesy its outcome.
In my judgment the allegations of the bill do not charge such a fraud as would authorize the Court to review the correctness of the Comptroller’s judgment in levying the assessment.
The only facts set forth in the bill which it is claimed show fraud deal with the sale to the Hamilton National Bank. It is alleged that the conservator was without legal authority under the statute to make such a sale; that the conservator was to become an officer of the Hamilton National Bank after the purchase and that therefore the sale was not binding on the District Bank; that the sale by its terms was grossly unfair to the District National Bank, and that by this sale the District Bank was stripped of most of its liquid assets.
But it is not charged that in approving this sale the Comptroller did not use his best judgment or that he did not honestly believe that it was to the advantage of the District Bank to make the sale.
In my judgment this is not a charge that the Comptroller was guilty of fraud either in fact or in law in approving the sale.
In fact the sale was actually made. As a result thereof a large sum of money was paid out to creditors of the District Bank and to that extent its debts were paid.
Whether the sale was authorized by the statute, whether it was valid in law, or whether the highest price was realized for the District National Bank, the facts remain that the sale was consummated and that the remaining assets of the bank are insufficient to pay the debts.
In my judgment the facts stated do not authorize the Court to assume jurisdiction to determine whether or not the *282 Comptroller was correct in his decision that in order to pay the debts of the bank it is necessary now to enforce the individual liability of the stockholders.
Even if the Comptroller’s decision were open to review by this Court the facts stated in the bill indicate his decision is correct.
The purpose of the legislation is to provide for a speedy liquidation of the Bank’s affairs and prompt payment to the creditors. Part of the debts have been paid but there is not enough on hand to pay the balance. After years of litigation some moneys may be realized from some of the sources mentioned in the bill of complaint. But as between the creditors and stockholders the latter should run the risk and suffer the delay.
If as a result of this litigation anything should be collected over and above the debts, that money of course will belong to the stockholders, and ultimately they may be repaid.
Therefore I conclude that the bill of complaint does not state facts which would justify the Court in enjoining the collection of the assessment, and the motions to dismiss should be granted.
3. Having held that the averments of the bill do not support the main object thereof I think the remaining causes of action are unrelated and may not be joined in the same unit.
The claim of the plaintiffs against the Secretary of War growing out of the sale of the bonds in order to pay the deposit of the Philippine Islands Gold Standard Fund is quite distinct from the claim against the Hamilton National Bank growing out of the sale to it in September, 1933; and neither of these has any relation to the claim for excessive costs of administration against the officers of the Government.
The rule in equity is settled that such unrelated causes of action may not be joined in the same suit. See Loehler v. Auth, 60 App. D. C. 273.
*283 Therefore I do not pass upon the merits of any of those causes of action but sustain the motions to dismiss on the ground that the bill is multifarious, with leave to amend if desired.